IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN MILLARD, and<br>SANDRA M. MILLARD<br>Plaintiffs<br>v.<br><br>SHELBY CASUALTY INSURANCE COMPANY<br>Defendant | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | <br><br><br>3:CV-02-1902<br>(CHIEF JUDGE VANASKIE) |

MEMORANDUM

The Motion for Summary Judgment filed by Defendant Shelby Casualty Insurance Company ("Shelby") presents for adjudication at this time the following issues:

- Whether, as a matter of law, undisputed misrepresentations made by Plaintiff Kevin Millard in seeking recovery from Shelby for property stolen from Plaintiffs bar recovery in this action.
- Whether, as a matter of law, the stolen tools and materials were used at any time for a "business" purpose, thereby severely restricting recovery under Plaintiffs' homeowners insurance policy issued by Shelby.
- Whether, as a matter of law, Shelby had a reasonable basis for denying Plaintiffs' claim, thereby precluding recovery under Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371.

Having concluded that each of the questions must be answered in the affirmative, I will grant Shelby's summary judgment motion.

## I. BACKGROUND

### A. Factual Background[1]

Plaintiffs Kevin and Sandra Millards' place of residence is located on Lake Avenue, Montrose, Pennsylvania. This property was covered by a homeowners insurance policy issued by Shelby under policy number HM000660615. The Millards also own a property in Jessup Township, Pennsylvania, located approximately nine (9) miles from their residence. This second property was purchased by the Millards in September of 2001. It was insured by the Aegis Group as a "Rental Mobile Home."[2] (Ex. "F" to Shelby's Summ. J. Mot.) The property was purchased, in part, so that Mr. Millard could sell stone from the quarry located on the

---

[1] In moving for summary judgment, Shelby filed a Statement of Material Facts (Def's S.M.F.) in numbered paragraph form as required by Local Rule of Court 56.1. Plaintiffs did not respond to Shelby's Statement of Material Facts. Instead, they filed their own Statement of Material Facts, a document not contemplated by the Local Rules of Court. As a consequence, it appears that Plaintiffs do not contest Shelby's assertions of fact. In this regard, it is significant that Local Rule of Court 56.1 stipulates that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Accordingly, the statements presented by Shelby in compliance with Local Rule 56.1 will be considered to be uncotroverted.

[2] The Millards' application for insurance from the Aegis Group stated that "Jim Smith" was their tenant on the Jessup Township property, and claimed that the property insurance was for a "rental mobile home." (Def's S.M.F. at ¶7; Ex. "F" to Shelby's Summ. J. Mot.) The application sought coverage of $40,000 on the manufactured home and personal liability coverage of $100,000. The Millards did not seek any coverage for personal property located on the Jessup Township Property.

property.[3]

Mr. Millard has owned and managed the "Pub & Grub" restaurant in Susquehanna County for a number of years. (Def's S.M.F. at ¶ 6.) He has also been in the business of "fixing up and selling" homes, having acquired, renovated, and then sold eight to ten structures in twenty years. (Id. at ¶5.) He has performed much of the repair work himself, but occasionally did hire others to assist. (Id.)

On January 30, 2002, a theft occurred at the barn located on the Jessup Township property. As a result of the theft, Mr. Millard lost approximately $12,846.68 in tools and materials. Mr. Millard notified his local insurance agent of the theft, and submitted a claim for $12,846.68 to Shelby on February 20, 2002.[4]

The claim was assigned to Bill Kennedy, a field adjuster for Shelby, on February 25, 2002. Mr. Kennedy sent a letter to Mr. Millard requesting that he complete a "Statement of Fact" concerning his claim and return it to him signed and notarized. In his statement, Mr. Millard listed his occupation as a "farmer" and claimed the Jessup Township property was used

---

[3] Mr. Millard operated his stone quarry business off and on from September 2001 through October 2002. He mined "Bluestone" from the quarry, which he sold through a broker to a variety of purchasers. (Millard Dep. at 38, 71.) The insurance application submitted to Aegis listed Mr. Millard's occupation as "stone quarry" operator. (Ex. "F" to Shelby's Summ. J. Mot.)

[4] Mr. Millard submitted a handwritten list itemizing the stolen items. (Ex. 1 to Plf's Opp. to Summ. J. Mot.) They included 2 toolboxes, 2 chain saws, 11 hammers, 16 chisels, a 100 foot measuring tape, 2 levels, nails, 2 squares, a drill, saws, a grinder, an air hose, a generator, wrench and socket sets, several windows, a door, and gas cans.

for "farming, cutting wood and recreation." (Def's S.M.F. at ¶12.) He also claimed that the stolen tools and equipment were kept in the barn because he was "working on the barn and the house." (Id.) He stated that the property was neither rented nor used by others in any capacity. Despite the fact that he was specifically asked to list all past claims under his policy, Mr. Millard failed to indicate in his statement that he had made a prior theft claim under his homeowners policy to Shelby on April 12, 1999. (Id. at ¶ 13.) Mr. Millard completed the "Statement of Fact" and returned it to Mr. Kennedy, signed and notarized, on March 3, 2002.

After receiving Mr. Millard's "Statement of Fact" on March 8, 2002, Shelby determined that the tools and equipment allegedly stolen constituted property that was located away from the "residence premises,"[5] and that had been used for a "business" purpose. The Shelby policy limits recovery to $250 for "property away from the 'residence premises' used at any time or in any manner for any 'business' purpose." (Ex. "H" to Shelby's Summ. J. Mot.) "Business" is defined under the Shelby policy to include "trade, profession or occupation." (Id.)

The decision to limit recovery was conveyed to the Millards by letter dated May 2, 2002, along with a check for $250. By letter (incorrectly dated May 9, 2002 due to a word processing error) sent on or about June 10, 2002 the Millards' attorney informed Shelby that Mr. Millard was deleting from the claim three items because they had been used in his stone quarry

[5] The Shelby policy defined "residence premises" to mean the property where the insureds resided and which was identified as such on the Declaration page, i.e., the property on Lake Avenue, Montrose, Pennsylvania. (Ex. "H" to Shelby's Summ. J. Mot.)

business. The adjusted total value of the stolen tools and equipment amounted to $10,867.[6] (Ex. "B" to Shelby's Summ. J. Mot.) The $250 check was returned to Shelby with a demand by the Millards' attorney for payment of $10,867 by August 1, 2002.

By letter dated July 29, 2002, the Millards' lawyer re-asserted that, with the exception of the chisel and air hose, the items stolen from the Jessup Township property "were purely personal and 'non business.'" (Ex. 6 to Plfs' Opp. to Summ. J. Mot.) Plaintiffs' counselor further asserted that refusal to pay the claim "without further delay constitutes bad faith . . . ." (Id.) Shelby, by letter dated August 9, 2002, responded by pointing out that Mr. Millard's original "Statement of Fact" had indicated that the stolen property had been used in Mr. Millard's "farming" business, thus making the $250 limitation of liability applicable. (Ex. 7 to Plfs' Opp. to Summ. J. Mot.)

Plaintiffs' attorney responded to this information by letter dated August 19, 2002, declaring that "Mr. Millard has not been in the business of farming for at least the past 20 years, if ever." (Ex. 8 to Plfs' Opp. to Summ. J. Mot.) Plaintiffs' attorney requested a copy of Mr. Millard's "Statement of Fact." He further asserted that Shelby had a duty to confirm Mr. Millard's statement that he was in the farming business.

Mr. Millard, through his lawyer, submitted an "Amended Statement of Fact" to Shelby by letter dated September 10, 2002. (Ex. 9 to Plf's Opp. to Summ. J. Mot.) In this statement Mr.

---

[6] The deleted items were 3 air chisels, 16 chisels and 1 air hose.

Millard listed his occupation as a "Tavern Owner" and further stated that he "is not and has never been engaged in the business of farming." He also claimed in his amended statement that the Jessup Township property was used for recreational purposes, implying that the property was not used for any business purpose, i.e., as a stone quarry or rental property. The Amended Statement also acknowledged that Millard had previously submitted an insurance claim to Shelby based upon an earlier alleged theft.

Shelby refused to reopen the Millards' claim based upon Mr. Millard's "Amended Statement of Fact," maintaining its position that the stolen items were subject to the "special limit of liability" under the Millards' homeowners insurance policy. (Ex. 11 to Plf's Opp. to Summ. J. Mot.) This action was then initiated on October 23, 2002, with Plaintiffs invoking diversity of citizenship jurisdiction under 28 U.S.C. § 1332. Plaintiffs seek recovery of $10,867 for breach of contract, claiming that the stolen property is not subject to the business use limitation. They also seek interest, counsel fees and punitive damages under Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371. Shelby has moved for summary judgment on both causes of action.

## II. DISCUSSION

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." FED. R. CIV. P. 56(c). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. Cont'l Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982). The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 256-57. Merely conclusory allegations taken from the pleadings are insufficient to withstand a motion for summary judgment. Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). Summary judgment is to be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A. Preclusion of Coverage for Material Misrepresentations

The insurance policy entered into between Shelby and the Millards contains a Concealment or Fraud provision that allows Shelby to void coverage where an insured

misrepresents material facts before or after the loss is sustained. Specifically, the Shelby policy provides:

> Under Section I - Property Coverage, with respect to all "insureds" covered under this policy, we provide no coverage for loss under Section I - Property Coverages if, whether before or after a loss, one or more "insureds" have:
>
> (1) Intentionally concealed or misrepresented any material fact or circumstance;
>
> (2) Engaged in fraudulent conduct; or
>
> (3) Made false statements;
> relating to this insurance.

(Ex. "H" to Summ. J. Mot.)

Pennsylvania courts have long ruled that a violation of the fraud and concealment provision of an insurance policy similar to the one in the Shelby policy serves as a complete bar to the insured's recovery under the policy. See Sack v. Glens Falls Insurance Co., 61 A.2d 852, 852-53 (Pa. 1984); Ellis v. Agricultural Ins. Co., 7 Pa. Super. 264, 265 (1898). "'So fundamental is the proposition that one cannot benefit from attempted or effected fraud, it needs no elaboration. Where any such fraud is shown, the forfeiture provisions of an insurance policy are to be strictly enforced.'" Lavin v. Fireman's Ins. Co. of Newark, N.J., Civ. A. No. 91-0114, 1992 WL 157691, at *2 (E.D. Pa. June 29, 1992). To void an insurance policy under the law of Pennsylvania, the burden is placed on the insurer to prove that: (1) the insured made a false representation; (2) the insured knew the representation was false when it was made or the

insured made the representation in bad faith; and (3) the representation was material to the risk being insured. Saracco v. Vigilant Ins. Co., No. Civ. A. 99-3502, 2000 WL 202274, at * 2 (E.D. Pa. Feb. 22, 2000), aff'd, 250 F.3d 736 (3d Cir. 2001)(Table)

It is undisputed that Mr. Millard indicated in his "Statement of Fact," solicited by Shelby to assess his claim, that his occupation at the time of the theft was a farmer. Mr. Millard later admitted that he had never been a farmer. In addition, Mr. Millard made other false representation in his "Statement of Fact." For, example, he stated that he had no prior claims on the Jessup Township property or any of his other properties. In his "Amended Statement of Fact," Mr. Millard admitted that he had filed a prior claim with Shelby. Mr. Millard failed to disclose that he operated a stone quarry business on the Jessup Township property. Nor did he indicate that the premises had been insured as a rental property or that he regularly bought, renovated and sold the rehabilitated houses.

Plaintiffs do not deny that the original sworn Statement of Fact contained false representations. Nor do they claim that they were unaware of their falsity when the Statement of Facts was submitted. The only remaining issue is whether "the representation was material to the risk being insured." Saracco, supra, 2000 WL 202274, at *2.

"The question of materiality is generally considered one of fact and law, but if the facts misrepresented are so obviously important that 'reasonable minds cannot differ on the question of materiality,' then the question becomes one of law that the court can decide at the summary

judgment stage." Parasco v. Pacific Indem. Co., 920 F. Supp. 647, 654 (E.D. Pa. 1996) (citing Gould v. American-Hawaiian S.S. Co., 535 F.2d 761, 771 (3d Cir. 1976); Fine v. Bellefonte Underwriters Ins. Co., 725 F.2d 179, 183 (2d Cir.) cert. denied, 469 U.S. 874 (1984)) "In the context of an insurer's post-loss investigation, 'the materiality requirement is satisfied if the false statement concerns a subject relevant and germane to the insurer's investigation as it was then proceeding.'" Id. (quoting Fine, 725 F.2d at 183.) Stated otherwise, "[a] misrepresentation will be considered material if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented." Lavin, 1992 WL 157691, at *2 (citing Long v. Ins. Co. of North America, 670 F.2d 930, 934 (10th Cir. 1982) "A misrepresentation is also material if [it] may be said to have been calculated either to discourage, mislead or deflect the company's investigation in any area that might seem to the company, at that time, a relevant or productive area to investigate." Peer v. Minnesota Mutual Fire & Casualty Co., No. Civ. A. 93-2338, 1995 WL 141899, at *10 (E.D. Pa. March 27, 1995) (internal quotations omitted).

Thus, for example, untrue statements pertaining to the value of destroyed personalty have been regarded as material as a matter of law, warranting summary judgment in the insurer's favor under the applicable "fraud-and-concealment" provision. See Sphere Drake Ins. Co. v. Zakloul Corp., Civ. A. No. 96-8123, 1997 WL 312217, at *7 (E.D. Pa. June 3, 1997). Failure to disclose a threatened mortgage foreclosure and misrepresentations as to items of property purportedly destroyed in a fire but actually lost before the fire were found material to an

insurer's investigation, with the result being that the insurer was granted summary judgment under the policy's "Fraud and Concealment" condition. Saracco, 2000 WL 202274, at * 6. Misrepresentations pertaining to pre-fire efforts to sell a property similarly compelled summary judgment in favor of the insurer in Parasco, 920 F. Supp. at 655.

In this case, the misrepresentations made by Mr. Millard were plainly "relevant and germane" to Shelby's investigation. An issuer of a homeowners' policy under which coverage is sought for property located away from the insured premises would certainly attach importance to the insured's occupation. Accurate disclosure of the insured's occupation clearly is relevant to a determination as to whether the items may have been used at any time for a "business" purpose. For example, knowing that Plaintiff regularly repaired and sold houses would suggest that tools had been used for a business purpose. Knowing the use of a non-residence property would also be pertinent to this inquiry. Indeed, Plaintiffs' argument that Shelby could not have concluded that the tools had a "business" purpose because they were not agricultural implements and Mr. Millard initially claimed to be a farmer, although missing the mark on "business" purpose (as explained below), illustrates the materiality of the unexplained misrepresentation. Moreover, Mr. Millard's failure to disclose that he had engaged in the business of home repairs was plainly material to a determination as to whether the tools had been used at any time for a business purpose. So, too, was his failure to disclose that he operated a stone quarry on the property where the tools had been stored, and that he had

insured the premises as a rental property.

Plaintiffs, in opposing summary judgment, do not even address the materiality question. Instead, they claim that Shelby must show prejudice. Significantly, Plaintiffs rely upon cases dealing with the timeliness of notice of a claim. E.g., Brakeman v. Potomac Ins. Co., 371 A.2d 193 (Pa. 1997). As Shelby argues, this line of cases is not pertinent to its defense based upon indisputable misrepresentations and omissions of plainly material facts. As noted above, "[i]n Pennsylvania, a violation of the fraud-and-concealment provisions in an insurance policy results in a total avoidance of the policy and is a bar to the insured's recovery under the policy." Lavin, 1992 WL 157691, at * 2. Shelby, having established a violation of its fraud-and-concealment provision, is thus entitled to summary judgment on the Millards' breach of contract claim.

B. Breach of Contract

Even if a violation of the fraud-and-concealment provision had not been shown, Shelby would be entitled to summary judgment because the items in question had been used for a "business" purpose. Mr. Millard acknowledged at his deposition that he may have used all the stolen tools in connection with his restaurant business. Moreover, Mr. Millard had used the property where the tools were located as a quarry. He had been in the business of buying, renovating and selling structures at a profit. He had insured the Jessup Township property as a rental property. There is no evidence that he intended to reside on the property. He admitted that he had used the tools to repair the barn, and the windows and other items stolen from the

property were to be used to repair the structures on the property. The property plainly had a "business" purpose, both as a quarry and for rental purposes. Furthermore, all the tools could be used in connection with the business of buying, repairing and selling distressed structures. Under these circumstances, no reasonable juror could conclude that the items had not been used for a business purpose. Thus, Shelby is entitled to summary judgment on the breach of contract claim.

C. Bad Faith Claim

Pennsylvania has established a statutory remedy for bad faith on the part of insurance companies. Section 8371 of title 42 PA. CONS. STAT. ANN. provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorneys fees against the insurer.

The standard for determining insurer bad faith under § 8371 was recently restated in Keefe v. Prudential Property and Casualty Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000)(citing Terletsky v. Prudential Property and Casualty Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1997)(quoting Black's Law Dictionary 139 (6th Ed. 1990))):

> [T]he term bad faith includes 'any frivolous or unfounded refusal to pay proceeds of a policy.' 'For purposes of an action against an insurer for failure to pay a claim, such conduct imparts a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self interest or ill will; mere negligence or bad judgment is not bad faith.' Therefore, in order to recover under a bad faith claim, a plaintiff must show (1) that the defendant did not have a reasonable basis for denying benefits under the policy; and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim.

In the seminal decision of Cowden v. Aetna Casualty and Surety Co., 134 A.2d 223, 229 (Pa. 1957), the Supreme Court of Pennsylvania pronounced that, under Pennsylvania law, bad faith on the part of an insurer must be proven by clear and convincing evidence. See also Hall v. Brown, 526 A.2d 413, 416 (Pa. Super. Ct. 1987). This holding has also been affirmed by our Court of Appeals in U. S. Fire Ins. Co. v. Royal Ins. Co., 759 F.2d 306, 309 (3d Cir. 1985), and applied to § 8371 claims. See Kubrick ex rel. Kubrick v. Allstate Ins. Co., 121 Fed. Appx. 447, 448 (3d Cir. 2005) (citing Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 752 (3d Cir. 1994)). As the plaintiff must prove both elements by clear and convincing evidence, "the plaintiff's burden in opposing a summary judgment motion is commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial." Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999). The initial step here is to determine whether the Millards can present "clear and convincing evidence" that Shelby did not have "a reasonable basis for denying benefits under the policy." Keefe, 203 F.3d at 225

(3d Cir. 2000).[7]

Shelby's decision that the Millards' claim was subject to the "business purpose" liability limitation was made on May 2, 2002. The information that was available to Shelby at that time provided a reasonable basis for Shelby to conclude that the Millards' claim was subject to the "business purpose" liability limitation under their insurance policy. As stated previously, a reasonable basis for the insurer's position defeats a claim of bad faith. See Horowitz v. Federal Kemper Life Assur. Co., 57 F.3d 300, 307 (3d Cir. 1995); see also Hyde Athletic Indus., Inc. v. Cont'l Cas. Co., 969 F. Supp. 289, 307 (E.D. Pa. 1997) ("While an insurance company has a duty to accord the interests of its insured the same consideration it gives its own interests, an insurer is not 'bound to submerge its own interest in order that the insured's interests may be made paramount,' and an insurer does not act in bad faith by investigating and litigating legitimate issues of coverage.") (quoting Cowden, 134 A.2d at 228).

Mr. Millard stated in his original "Statement of Fact" submitted to Shelby that the stolen items were stored away from the premises insured by Shelby because he "was working on the

---

[7] Plaintiffs assert in a surreply brief that a refusal to investigate a claim as presented, "factually correct or otherwise," is sufficient to sustain a bad faith claim. (Dkt. Entry 28 at p.1, n.1) In this regard, they seem to argue that an insurer has a duty to verify information supplied by the insured. Plaintiffs cite no authority to support this assertion. As noted above, an insurer can void coverage for material misrepresentations and omissions of the insured. It necessarily follows that an insurer has no obligation to correct an insured's misrepresentation and pay a claim that the insured may have otherwise been able to present but for the insured's material misrepresentations or omissions. Furthermore, where, as here, there were ample grounds for denying coverage, an insured cannot show injury from the alleged bad faith.

barn and house." (Ex. "A" to Shelby's Summ. J. Mot.) Clearly, repair of a barn and non-residence house would be in furtherance of the farming business in which Mr. Millard claimed to be engaged. Thus, there was plainly a reasonable basis for the initial denial of the claim. Contrary to Plaintiffs' assertion, the limitation of liability provision was not restricted to use of property that would be integral to the insured's trade, occupation or profession. Instead, the policy limited coverage to property located away from the insured premises if it had been used for any business purpose. Repairing a barn would be in furtherance of the farming occupation that Mr. Millard claimed to be pursuing. Thus, as a matter of law, Shelby had a reasonable basis for the position it took.

Subsequent disclosures made by the Millards' attorney did not warrant re-examination of the claim. On the contrary, the revelations served to afford additional grounds for denying the claim, including the material misrepresentations and omissions when the claim was first presented. Accordingly, Shelby is entitled to summary judgment on the statutory bad faith claim.

## III. CONCLUSION

For the reasons set forth above, Shelby's motion for summary judgment will be granted. An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN MILLARD, and | : | |
| SANDRA M. MILLARD | : | |
| Plaintiffs | : | |
| v. | : | 3:CV-02-1902 |
| | : | (CHIEF JUDGE VANASKIE) |
| SHELBY CASUALTY INSURANCE | : | |
| COMPANY | : | |
| Defendant | : | |

ORDER

NOW THIS 24th DAY OF AUGUST, 2005, for the reasons set forth in the foregoing Memorandum, IT IS HEREBY ORDERED THAT:

1. Defendant's motion for summary judgment (Dkt. Entry 18) is GRANTED.

2. The Clerk of Court shall enter judgment in favor of Defendant and against Plaintiffs.

3. The Clerk of Court is directed to mark this matter CLOSED.

s/ Thomas I. Vanaskie_______
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania